## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS FREEMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  12-1422 |
| PHILADELPHIA HOUSING | : | |
| AUTHORITY, FRED PASOUR, and | : | |
| STACEY THOMAS, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S.J.                                                    August 8, 2012

Currently pending before the Court are (1) the Motion to Dismiss of Defendant Fred

Pasour, and (2) the Motion to Dismiss of Defendants Philadelphia Housing Authority and Stacey

Thomas.  For the following reasons, the Motions are granted in part and denied in part.

## I.    FACTUAL HISTORY

According to the facts set forth in the Complaint, Plaintiff Thomas Freeman began

working at the Philadelphia Housing Authority ("PHA") in 1992, and was continuously

employed during that period of time as an Asset Manager I.  (Compl. ¶ 17.)  During his tenure at

PHA, Plaintiff suffered from diabetes and, in 2006, began experiencing problems with his

diabetic foot.  (Id. ¶¶ 19–20.)  Defendants were purportedly aware of Plaintiff's diabetic

condition since at least 2006.  (Id. ¶ 20.)

On May 8, 2009, Plaintiff left work early with a swollen foot and was admitted to Temple

University Hospital that same day.  (Id. ¶ 21.)  The physicians there diagnosed him with a

diabetic foot injury and instructed him to stay off the foot for one week.  (Id. ¶ 22.)

Subsequently, on May 15, 2009, Defendant Stacey Thomas, PHA's Labor Relations Coordinator,

received a Disability Statement from Dr. Leslie Robinson at Temple University Hospital

certifying that Plaintiff was diagnosed with "Diabetic Foot Injury."  (Id. ¶ 23.)  Dr. Robinson

cleared Plaintiff to return to work without restrictions on May 18, 2009, and Plaintiff in fact

returned to work on that date.  (Id.)

On June 5, 2009, while visiting PHA rental units, performing inspections, and collecting

rent at a PHA development, Plaintiff began to experience extreme foot pain.  (Id. ¶ 24.)  He

informed a manager that he was not feeling well and requested to leave work a half hour early.

(Id.)  The following day, Plaintiff went to the emergency room at Temple University Hospital,

where he lost consciousness.  (Id. ¶ 25.)  When he woke up, his sugar level was very high and his

left foot was swollen.  (Id.)  Temple physicians explained to him that it was necessary to

amputate some of his toes.  (Id. ¶ 26.)  On June 7, 2009, Plaintiff underwent surgery and had

several toes on his left foot amputated.  (Id. ¶ 27.)  Defendant Thomas was informed about

Plaintiff's condition the following day, at which time Thomas sent Plaintiff a letter

acknowledging his request for a leave of absence and informing him of his rights and obligations

under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.  (Id. ¶¶ 28–29.)

Defendants also advised Plaintiff that he was required to submit a medical certification form in

order to qualify for FMLA leave.  (Id. ¶ 29.)

After the initial surgery, the Temple physicians discovered that Plaintiff had gangrene and

required further surgeries for more amputations.  (Id. ¶ 30.)  Two more surgeries were

subsequently performed, on June 9, 2009 and June 11, 2009 respectively, resulting in the

2

amputation of all five toes on his left foot.  (Id. ¶ 31.)  On June 12, 2009, Plaintiff submitted his

Request for Leave of Absence form and the "Certification of Health Care Provider" form to

Defendant Thomas, signed by his physician and certifying that Plaintiff suffered a serious

medical condition and was unable to do any work for three to four months.  (Id. ¶ 32.)  Plaintiff

was fully discharged from Temple University Hospital during the last week of June 2009, and

was fitted with a boot that enabled him to walk with the aid of crutches or a cane.  (Id. ¶¶ 33–34.)

Almost immediately upon discharge from Temple University Hospital, Plaintiff was

admitted to Hopkins Rehabilitation for approximately twenty days in order to rehabilitate his left

leg and foot.  (Id. ¶ 35.)  On July 14, 2009, he was discharged from Hopkins Rehabilitation.  (Id.

¶ 36.)  Upon leaving Hopkins, Plaintiff contacted and spoke with Defendant Thomas about his

condition, and informed Thomas that he was willing and able to return to work at the PHA.  (Id.

¶ 38.)  Thomas advised Plaintiff that his job would remain available to him for up to one year and

that Plaintiff could continue to use any sick and vacation time he had accumulated while on

leave.  (Id. ¶ 39.)  Upon the recommendation of his physician, Plaintiff then requested a desk job

as an accommodation for a couple of weeks so that his wound would fully heal.  (Id.)  Plaintiff

believed that this requested accommodation would not have imposed an undue hardship on

Defendant PHA since he could effectively complete his duties as Asset Manager I while sitting at

a desk.  (Id. ¶ 40.)  Nonetheless, Thomas informed Plaintiff that she would "get back to him"

regarding the accommodation.  (Id. ¶ 41.)

In or around October or November 2009, Plaintiff was fitted with a new boot that enabled

him to walk without the aid of crutches or a cane.  (Id. ¶ 37.)  During the same time period, and

after several conversations, Thomas informed Plaintiff that he would have to speak with

Defendant Fred Pasour—PHA's Acting General Counsel—about being cleared to return to work. (Id. ¶¶ 11, 42.)  In January 2010, after several unsuccessful attempts, Plaintiff finally got through to Mr. Pasour, who asked Plaintiff if he could walk.  (Id. ¶ 43.)  Plaintiff responded that he could walk and that his physician had cleared him to return to work.  (Id.)  Pasour, however, informed Plaintiff that he could not return to work until PHA's physician cleared him, and instructed Plaintiff to schedule an appointment with Defendant Thomas to be seen by PHA's physician. (Id. ¶ 44.)

From January to February 2010, Plaintiff made several requests to Defendant Thomas to schedule an appointment, and also attempted to call Defendant Pasour, all to no avail.  (Id. ¶ 45.) On February 17, 2010, Plaintiff received a letter from Defendant Pasour that his "Family Medical Leave of Absence" had "expired."  (Id. ¶ 46.)  According to Plaintiff, he was never informed by PHA that he was on FMLA leave and, in fact, was unaware of his FMLA status until receipt of this letter.  (Id.)  Indeed, he was repeatedly informed by Defendants, since June 2009, that he could return to work when cleared.  (Id.)  Nonetheless, the letter went on to advise Plaintiff that he was being terminated from employment, effective February 19, 2010.  (Id. ¶ 47.)  Ultimately, following his termination, Plaintiff underwent amputation of his left leg slightly below the knee. (Id. ¶ 19.)

On May 3, 2011, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination and retaliation.  (Id. ¶ 48.) The Complaint was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"). (Id.)  On March 26, 2012, the EEOC issued a Right to Sue letter.  (Id. ¶ 49.)

Plaintiff initiated the current litigation on March 21, 2012, setting forth seven causes of

action as follows: (1) violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §

1201, et seq. against Defendant PHA (Count I); (2) retaliation under the ADA against Defendant

PHA (Count II); (3) failure to accommodate under the ADA against Defendant PHA (Count III);

(4) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., against

Defendant PHA (Count IV); (5) interference under the FMLA against Defendants Thomas and

Pasour (Count V); (6) violation of the Pennsylvania Human Relations Act ("PHRA"), 42 Pa.C.S.

§ 951, et seq., against Defendant PHA (Count VI); and (7) aiding and abetting discrimination and

retaliation under the PHRA against Defendants Thomas and Pasour (Count VII).  (Compl. ¶¶

50–87.)  Along with compensatory damages for emotional distress, loss of earnings, loss of

future earning power, back pay, front pay, interest, and liquidated damages, Plaintiff also seeks

punitive damages due to the alleged "outrageous, malicious, wanton, willful, reckless and

intentional[]" conduct by Defendants.  (Id. ¶¶ 88–91.)

     On June 6, 2012, Defendant Fred Pasour moved to dismiss Counts V and VII of

Plaintiff's Complaint and Defendants PHA and Stacey Thomas moved to dismiss the entirety of

the Complaint.  Plaintiff responded to both Motions on June 19, 2012, and Defendant Pasour

filed a Reply Brief on June 29, 2012.  The Motions are now ripe for judicial review.

## II.    STANDARD OF REVIEW

     Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of

demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl.

Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Id. at 555.  It emphasized that it would not require a "heightened fact pleading of specifics,

but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

       In the subsequent case of Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court

enunciated two fundamental principles applicable to a court's review of a motion to dismiss for

failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

at 678.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous

departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for

relief survives a motion to dismiss." Id. at 679.  "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." Id.

       Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the

fundamental underpinnings of the Rule 12(b)(6) standard of review.  Arner v. PGT Trucking,

Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v.

Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15,

2008).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim

showing that the pleader is entitled to relief and need not contain detailed factual allegations.

Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Further, the

court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

III.    **DISCUSSION**

As indicated above, Plaintiff's Complaint faces two separate Motions to Dismiss, one brought jointly by Defendants Stacey Thomas and the PHA, and one brought by Defendant Fred Pasour.  Defendants PHA and Thomas allege that Plaintiff's Complaint fails in its entirety because (1) Plaintiff did not comply with the applicable statute of limitations for the ADA, FMLA, or PHRA; and (2) Plaintiff has not adequately pled a claim for violation of the FMLA. Defendant Pasour joins in these arguments and, in addition, asserts that the Complaint against him fails because: (1) Plaintiff's interference claims under the FMLA do not plead any facts to establish that Mr. Pasour exercised control over Plaintiff's FMLA leave or otherwise had any supervisory authority over him; and (2) to the extent Plaintiff could state a legally cognizable cause of action against Mr. Pasour under either the FMLA or the PHRA, Plaintiff's demand for punitive damages must be dismissed because such damages are not available under either statute. For clarity of discussion, the Court individually addresses the three statutes at issue and all challenges to Plaintiff's claims under each of those statutes.

A.    **ADA Claims**

Defendants initially contend that Plaintiff's ADA claims are time-barred.  The ADA does not have its own statute of limitations, but rather adopts the "powers, remedies, and procedures,"

including the statute of limitations, of Title VII of the Civil Rights Act.  42 U.S.C. § 12117(a);

see also Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999) (explaining that Title VII

procedures set out in 42 U.S.C. § 2000e-5 apply to ADA claims).  Title VII provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that ***in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency*** with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, ***such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier***, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(1) (emphasis added).  As the United States Court of Appeals for the Third

Circuit has explained, "[u]nder Title VII, a charge of race discrimination in employment must be

filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment

practice."  Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469–70 (3d Cir.

2001) (citing 42 U.S.C. § 2000e-5(e)(1)).  "If the complainant also initiates a complaint with a

parallel state agency . . . the period for filing the charge with the EEOC is extended to 300 days

from the day of the alleged unlawful employment practice."  Id. at 470.  "Generally a judicial

complaint . . . will be dismissed for failure to exhaust administrative remedies if a supporting

EEOC charge was not filed within 180 or 300 days (depending on state law) of notification to the

employee of the adverse employment action."  Ruehl v. Viacom, Inc., 500 F.3d 387, 382 (3d Cir.

2007).

 In the present case, Plaintiff was explicitly terminated from his position on February 19,

2010.  (Compl. ¶ 47.)  Because Plaintiff jointly filed a complaint with the PHRC, he had 300

days from this incident to file with the EEOC.  Yet, Plaintiff did not file his Charge of

Discrimination with the EEOC until May 3, 2011—438 days after his termination.  (Id. ¶ 48.)

This failure to file within the 300-day time limit bars Plaintiff from exhausting his administrative

remedies, which in turn precludes him from bringing the present judicial action.

      In an effort to escape the ramifications of his delay, Plaintiff argues that, on July 14,

2009, he spoke with Defendant Thomas who told him his job would be available "for up to one

year."  (Id. ¶ 39.)  Thus, he claims to have been "misled by defendants into believing that he

would be entitled to return to work through July 14, 2010."  (Pl.'s Resp. Opp'n Mot. Summ. J.

8.)  Moreover, he asserts that he was never informed that he was being placed on FMLA leave or

that his FMLA leave had expired, until he received the February 17, 2010 letter, at which point

he still believed that he had until July 14, 2010 to return to work.  (Id.)  As such, Plaintiff now

claims that, viewing the facts in the light most favorable to him, he had 300 days from July 14,

2010 to file his EEOC charge, meaning that, having filed 293 days later on May 3, 2011, his

claim is timely.

      This argument fails to grant Plaintiff any reprieve from his timeliness defects.  When

determining the proper adverse employment event that triggered the running of the limitations

period, the Court finds guidance from the Third Circuit decision in  Watson v. Eastman Kodak

Co., 235 F.3d 851 (3d Cir. 2000).  In that matter, the plaintiff was advised, on February 4, 1997,

that he was being removed from his position as an account executive due to poor performance.

Id. at 853.  In the same letter, he was told he would be allowed to remain at the defendant

company only until March 7, 1997, unless he found another position within the company.  Id.

When he was unable to do so, the defendant terminated his employment on that date.  Id.  The

9

plaintiff did not file an EEOC charge until 330 days after the termination letter, but less than 300

days after the March 7, 1997 actual termination date.  Id.  The district court granted summary

judgment in favor of defendant because the plaintiff had not exhausted administrative remedies.

Id. at 854.  On review, the Third Circuit affirmed.  Id.  At the outset of its analysis the Third

Circuit noted that "the crucial issue in this case is whether the actionable adverse employment

decision was the one to separate Watson from the position as Account Executive or the one to

terminate his employment with Kodak entirely."  Id.  Relying on the United States Supreme

Court's holding in Delaware State College v. Ricks, 449 U.S. 250 (1980), the court upheld the

lower court's finding that the unlawful termination claim accrued on February 4, 1997, the date

he received the letter from his supervisor.  Id. at 857.  The Third Circuit rejected plaintiff's claim

that the February 4, 1997 letter was equivocal because it preserved the possibility of continued

employment.  Id. at 856.  Rather, it found that merely because plaintiff effectively remained in

his Account Executive position until March 7, 1997 did not change the fact that the adverse

employment action occurred on the date that he was clearly informed of the operative decision to

terminate.  Id.  Citing Ricks, it concluded that "the proper focus is upon the time of the

discriminatory acts, not upon the time at which the consequences of the acts became most

painful."  Id. at 855 (internal citations and quotations omitted).  Since Watson, the Third Circuit

has repeatedly reaffirmed that "an adverse employment action occurs, and the statute of

limitations begins to run, at the time the employee receives notice of that action and termination

is a delayed, but inevitable result."  Id. at 853; see, e.g., Ruehl, 500 F.3d at 383; Urban v. Bayer

Corp. Pharm. Div., 245 F. App'x 211, 212–13 (3d Cir. 2007); Thompson v. Gen. Elec. Co., 81 F.

App'x 415, 417–18 (3d Cir. 2003).

In the present case, Plaintiff's argument is even less compelling than the plaintiff's in Watson.  Plaintiff spoke with Defendant Thomas on July 14, 2009, upon being discharged from Hopkins Rehabilitation, at which point Thomas made the equivocal and amorphous statement that Plaintiff's job would remain available to him for "up to one year."  (Compl ¶ 39.)   After that time, there was no further mention of this "one year" period.  More than seven months later, on February 17, 2010, Plaintiff received a letter from Defendant Pasour, on behalf of Defendant PHA, expressly and clearly informing him that his "Family Medical Leave of Absence" had "expired" and that he was being terminated from employment, effective February 19, 2010.  (Id. ¶¶ 46–47.)  The Complaint alleges no subsequent events, conversations, letters, or other transactions that would have led Plaintiff to believe, notwithstanding this explicit termination letter, that Thomas's previous statement regarding job availability for "up to one year" still held true.  In light of the Supreme Court's decision in Ricks, as well as the Third Circuit rulings in Watson and its progeny, this Court must find that the adverse employment action in this case occurred—and the statute of limitations began to run—at the time Plaintiff received clear notice of his inevitable termination.  Because that clear notice came on February 17, 2010, Plaintiff had 300 days from that date to file a charge with the EEOC.

Ultimately, because Plaintiff did not file his charge with the EEOC until May 3, 2011—138 days after the limitations period expired—Plaintiff has not and cannot now exhaust administrative remedies.  Absent such exhaustion, the Court has no recourse but to dismiss his ADA claims (Counts I, II, and III) against Defendant PHA.

**B.    FMLA Claims**

Defendants next argue that the FMLA claims also suffer from several defects.  First, all

11

Defendants contend that, like the ADA claims, the FMLA claims were filed outside the applicable limitations period.  Second, Defendants assert that, even if timely, Plaintiff has failed to adequately plead all elements of an FMLA violation.  Third, Defendant Pasour argues that the Complaint fails to set forth sufficient allegations to state an interference claim against him individually.  Finally, Defendant Pasour argues that Plaintiff's punitive damage claim under the FMLA is improper.

### 1.    Statute of Limitations

The statute of limitations for violation of the FMLA is two years after "the date of the last event constituting the alleged violation for which the action is brought."  29 U.S.C. § 2617(c)(1).  In the case of a willful violation of the FMLA, however, a plaintiff has three years in which to institute an action.  Id. § 2617(c)(2).  "To successfully allege a willful violation of the FMLA, the plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  Caucci v. Prison Health Servs., Inc., 153 F. Supp. 2d 605, 609 (E.D. Pa. 2001) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)) (further citations omitted).

Defendants contend that Plaintiff was terminated on February 19, 2010 and, as such, was required by law to assert his FMLA claims on or before February 19, 2012.  Plaintiff, however, did not file his Complaint until March 21, 2012, meaning the FMLA claims are time-barred.  Defendants go on to argue that the Complaint's "one self serving and conclusory paragraph" alleging willful violation of the FMLA is insufficient to properly plead such a violation of the FMLA, and thus invoke the three-year statute of limitations.  (Defs. PHA and Thomas's Mem. Supp. Mot. Summ. J. 7.)

12

The Court, however, must disagree.  The Complaint at issue specifically alleges that "[t]he willful violation of Plaintiff's rights under the Act were [sic] done in the absence of good faith and reasonable grounds."  (Compl. ¶ 70.)  As Plaintiff points out in his Response, the Complaint alleges multiple facts in support of this assertion, including: (1) Defendant Thomas allegedly misleading Plaintiff into believing that he would have "up to one year" to return to work (id. ¶ 39); (2) stalling with respect to Plaintiff's numerous requests to return to work with an accommodation of a desk job, until after the FMLA leave expired (id. ¶¶ 39, 41–45); (3) never notifying Plaintiff that he was on FMLA status until it had "expired" (id. ¶ 46); (4) interfering with Plaintiff's desired return to work by requiring that he be examined by a PHA physician, yet hindering Plaintiff's efforts to set up the appointment (id. ¶¶ 44–45); and (5) ultimately terminating Plaintiff because he was not cleared by the PHA physician despite Plaintiff's numerous efforts to be examined.  (Id. ¶ 46.)  Taking all of these facts as true, as is required by Federal Rule of Civil Procedure 12(b)(6), Plaintiff has pled a plausible cause of action—thus satisfying Iqbal pleading standards—for willful violation of the FMLA.  Accordingly, the three-year statute of limitations must be presumed to apply, meaning that Plaintiff's Complaint was timely filed.  While discovery might ultimately bear out different facts, such a finding is inappropriate at this early stage of the case.[1]

---

[1] Defendants cite to the case of Jetter v. Rohn & Haas Chems., LLC, No. Civ.A.08-1617, 2011 WL 2473917 (E.D. Pa. June 22, 2011) for the proposition that "where a complaint fails to allege with specificity a willful violation of the FMLA, it must be dismissed as a matter of law." (Defs. PHA and Thomas's Mem. Supp. Mot. Summ. J. 7.)  Notably, however, the FMLA claims in Jetter were dismissed on timeliness grounds during the summary judgment stage, after the discovery period already concluded.  Jetter, 2011 WL 2473917, at *1–2.  The present case, on the other hand, is at its earliest stages, with Defendants having yet to even file Answers.  Moreover, Defendants cite to no case to support the proposition that a claim of willful violation of the FMLA is subject to any heightened pleadings standard.  Indeed, in Ridner v. Salisbury

2.      **Pleading of the Elements of an FMLA Interference Cause of Action**

In a second challenge to the FMLA claims, Defendants contend that Plaintiff fails to properly plead an FMLA interference claim.  To state a claim for FMLA interference, a plaintiff must allege that: (1) he was an eligible employee under the FMLA; (2) the defendant-employer was subject to the requirements of the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave notice to the defendant of his intention to take FMLA leave; and (5) he was denied the benefits to which he was entitled under the FMLA.  Figueroa v. Merritt Hospitality, LLC, No. Civ.A.11-1807, 2011 WL 4389585, at *3 (E.D. Pa. Sept. 21, 2011) (citations omitted).  Under the fourth and fifth elements—upon which Defendants focus their argument—employees wishing to take qualified leave must provide adequate notice to their employers.  Grosso v. UPMC, --- F. Supp. 2d ---, No. Civ.A.10-0075, 2012 WL 787481, at *19 (W.D. Pa. Mar. 9, 2012).  "An employee need not specifically mention the FMLA or assert rights under it to satisfy the notice requirement."  Farver v. Coventry Health Care, Inc., No. Civ.A.10-1927, 2012 WL 1191849, at *6 (M.D. Pa. Mar. 2, 2012) (citing 29 C.F.R. § 825.302(c)) (additional citations omitted).  "The employee need only state that leave is needed."  Id.  Similarly, the fifth element may be presumed by a termination of the employee that forecloses an entitlement to benefits such as FMLA leave. Id. at *7.

In the case at bar, Defendants do not challenge Plaintiff's pleading of elements one, two, and three, but cursorily argue—with no explanatory analysis—that he has not pled either the

---

Behavioral Health, Inc., No. Civ.A.11-572, 2011 WL 5089806, (E.D. Pa. Sept. 28, 2011)—a case cited in the FMLA portion of Defendants' own brief—the Court found that a plaintiff's cursory allegations that the defendant's actions in terminating her were done "knowingly, intentionally, and discriminatorily" were sufficient to "successfully" plead a willful violation of the FMLA and thus invoke the three-year statute of limitations.  Id. at *4.

notice or the denial elements necessary to successfully establish an interference claim. The Complaint, however, belies this contention. Plaintiff specifically alleges that, on June 8, 2009, after being informed about Plaintiff's medical condition, "Defendant Thomas sent Plaintiff a letter acknowledging Plaintiff's request for a leave of absence and informing him regarding his rights and obligation under the Family and Medical Leave Act. Defendants also informed Plaintiff that he was required to submit a medical certification form in order to qualify for FMLA." (Compl. ¶¶ 28–29.) Plaintiff goes on to assert that, on June 12, 2009, he returned this Request for Leave of Absence, together with the "Certification of Health Care Provider" form to Defendant Thomas certifying that he suffered from a serious medical condition and was unable to do any work for three to four months. (Id. ¶ 32.) Such a request for leave is more than sufficient to adequately plead the fourth element of an FMLA claim.

With respect to the fifth element, the Complaint contends that, on February 17, 2010, Plaintiff received a letter from Defendant Pasour that his "Family Medical Leave of Absence" had expired and that he was being terminated, despite the fact that Plaintiff was "never informed by PHA that he was on FMLA leave and in fact was unaware that he was on FMLA until he received the letter." (Id. ¶ 46.) By asserting that Defendants misled Plaintiff into believing that he was not on FMLA leave until it technically expired and then immediately terminating him, Plaintiff has sufficiently alleged a "denial" of his FMLA rights.

In sum, the Court finds that Plaintiff has properly pled an interference claim under the FMLA. Accordingly, this portion of Defendants' Motion is denied.

### 3.    FMLA Interference Claim as to Defendant Pasour

Via a separate Motion to Dismiss, Defendant Pasour brings an individual challenge to the

15

FMLA interference claim asserted against him.  Specifically, Mr. Pasour asserts that, because Plaintiff's allegations contain no facts to indicate that he either had any supervisory authority over Plaintiff or that he exercised sufficient control over Plaintiff's termination or FMLA leave, Plaintiff cannot impose personal liability against him under the FMLA.

The FMLA defines an "employer" as, *inter alia*, "any person who acts, directly or indirectly, in the interest of an employer."  29 U.S.C. § 2611(4)(A)(ii)( I ).  In the recent case of Haybarger v. Lawrence Cnty Adult Probation & Parole, 667 F.3d 408 (3d Cir. 2012), the Third Circuit has joined the ranks of other circuits finding that individual liability is available under the FMLA.  Id. at 414.  Relying on the definition of "employer" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq., the Third Circuit held that "an individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest."  Id. at 417 (quoting Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir.1987)).  In analyzing an individual supervisor's control over the employee under the FLSA and the FMLA, the Third Circuit then remarked that "most courts look to the 'economic reality' of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee."  Id. (citing cases).  In other words, "whether a person functions as an employer depends on the totality of the circumstances rather than on 'technical concepts of the employment relationship.'"  Id. (quotation omitted).  To the end, the Third Circuit found several factors to be relevant in ascertaining the economic reality of the employment situation, including whether the individual "'(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of

16

employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. at 418 (quoting Herman v. RSR § Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)) (further quotations omitted).

In the present case, the allegations regarding Defendant Pasour are sparse at best.  The Complaint alleges that Mr. Pasour "is or was at all times material and relevant to this Complaint, Defendant PHA's Acting General Counsel.  As such he was responsible to see that Defendant PHA and Defendant Thomas, among others, comply with federal, state and local laws and regulations." (Compl. ¶ 11.)  Thereafter, Mr. Pasour's name does not make another appearance in the Complaint until the description of the October to November 2009 time period, when Defendant Thomas allegedly informed Plaintiff that he would have to speak with Defendant Pasour about being cleared to return to work.  (Id. ¶ 42.)  Plaintiff purportedly made multiple efforts to speak with Defendant Pasour and finally got through to him in January 2010.  (Id. ¶ 43.)  At that point, Defendant Pasour informed Plaintiff that he needed to schedule an appointment with Defendant Thomas to be seen by PHA's physician in order to be cleared for a return to work.  (Id.)  Ultimately, in February 2010, after Plaintiff had no success in scheduling an appointment through Defendant Thomas or reaching Defendant Pasour again, Pasour sent him the termination letter as described above.  (Id. ¶¶ 45–46.)

Notably, nothing in these allegations allows the Court to make any finding that Defendant Pasour could be deemed an employer for purposes of the FMLA.  At no point in his pleading does Plaintiff discuss Mr. Pasour's role in the company and authority over Plaintiff's employment, including whether Mr. Pasour actually had the power to hire and fire, control wages and work conditions, or even make decisions regarding FMLA eligibility.  To further complicate

17

the analysis, Plaintiff completely fails to address this issue in his Response to Defendant Pasour's Motion to Dismiss.  Accordingly, the Court must find that the Complaint fails to state a cognizable cause of action against Mr. Pasour for individual, personal liability under the FMLA.

It is well-established that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  This opportunity to amend must be offered, even if the plaintiff does not specifically make such a request.  Id. at 235. In the present matter, the Court finds that allowing such amendment in this case is appropriate for several reasons.  First, this case is at the earliest stages of litigation and Plaintiff has not yet amended his Complaint.  Second, the law regarding when an individual is an "employer" for purposes of FMLA liability is not well-developed, with the Third Circuit offering its first definitive opinion on this issue just prior to the filing of the Complaint.  Finally, Defendants have offered no basis—such as futility, bad faith, undue delay, or prejudice—that would counsel against allowing Plaintiff to amend his Complaint to more specifically plead an FMLA claim against Defendant Pasour.  Given the liberal amendment standard of Rule 15 and absent any of the aforementioned bases for denying leave, the Court grants Plaintiff twenty days to file an Amended Complaint in an effort to set forth sufficient allegations upon which individual liability may reasonably be imposed against Defendant Pasour.  His failure or inability to do so will, upon proper motion, result in dismissal of Defendant Pasour from suit with prejudice.

### 4.   Punitive Damages

Finally, as to the FMLA claim,[2] Defendant Pasour moves to dismiss Plaintiff's claim for punitive damages on the grounds that such damages are not available under that statute.  The Court agrees.

Although the Third Circuit has yet to address the subject of punitive damages in an FMLA claim, the statute itself lists the types of damages available and does not include punitive damages among them.  29 U.S.C. § 2617(a).  Courts within the Third Circuit have repeatedly interpreted the FMLA to disallow claims for punitive damages.  See, e.g., Cullison v. Dauphin Cnty., Pa., No. Civ.A.10-705, 2012 WL 3027776, at *19 (M.D. Pa. May 18, 2012); Haiden v. Greene Cnty. Career & Tech. Ctr., No. Civ.A.08-1481, 2009 WL 2341922, at *4 (W.D. Pa. July 27, 2009); Spain v. Colonial Penn Ins. Co., No. Civ.A.97-4010, 1997 WL 773053, at *2–3 (E.D. Pa. Dec. 12, 1997).

Given this body of jurisprudence and in light of Plaintiff's failure to make any argument to support a contrary position, the Court must likewise agree that punitive damages are unavailable under the FMLA.  As such, this portion of Defendants' Motion is granted and the claim for punitive damages under the FMLA is dismissed.

### C.   PHRA Claims

Finally, Defendants seek to dismiss Plaintiff's PHRA claims as barred by the applicable statute of limitations.  The PHRA mandates that "[a]ny complaint filed pursuant to this section

---

[2]  Defendant Pasour also moves to strike Plaintiff's claim for punitive damages under the PHRA.  As set forth below, however, the PHRA claim is dismissed in its entirety on other grounds.  Moreover, the Court does not address the viability of such damages under the ADA since no party has raised it as an issue in the Motions to Dismiss.

must be so filed [with the Pennsylvania Human Relations Commission] within one hundred eighty days after the alleged act of discrimination . . ."  43 Pa. Cons. Stat. § 959(h); see also Capriotti v. Chivukula, No. Civ.A.04-2754, 2005 WL 83253, at *2 (E.D. Pa. Jan. 14, 2005) ("To preserve a claim under the PHRA, the Plaintiff must file an administrative charge with the Pennsylvania Human Relations Commission within 180 days of the alleged act of discrimination.").  "If a plaintiff fails to file a timely complaint with the Pennsylvania Human Relations Commission, then he or she is precluded from judicial remedies under the PHRA." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).  Unlike claims under the ADA, there is no extension for joint filing with another agency.  See Capriotti, 2005 WL 83253, at *2 ("Filing within the 300 day EEOC deadline but past the PHRA deadline will not preserve Plaintiff's state claim.").

As set forth in detail above, the adverse employment action in this case occurred on February 17, 2010, when Plaintiff received a letter terminating him from his employment. Therefore, he had until August 16, 2010—180 days later—to file a claim with PHRC. Nonetheless, he waited approximately eight and a half more months—until May 3, 2011—to jointly file his charge with both the PHRA and EEOC.  Even were the Court to accept Plaintiff's previously-discussed argument that the adverse employment action occurred on July 14, 2010, his PHRA claim would still be untimely, as it was filed well over 180 days past that day.  Thus, the Court dismisses these claims (Counts VI and VII) from the Complaint.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will grant the Motion to Dismiss of Defendants Thomas and PHA as to the ADA claims (Counts I, II, & III) and the PHRA claims (Counts VI &

VII), but deny it as to the FMLA claims (Counts IV & V).  In addition, the Court grants Mr.

Pasour's Motion to Dismiss in its entirety, thereby dismissing Plaintiff's claim for punitive

damages under the FMLA, as well as all claims against Mr. Pasour individually.  Plaintiff shall

have twenty days from the date of the accompanying order to amend the FMLA claim against

Mr. Pasour.

      An appropriate order follows.